# IN THE COURT OF APPEALS OF IOWA

No. 21-1754
Filed January 27, 2022

**IN THE INTEREST OF M.M.,**
**Minor Child,**

**C.H., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Boone County, James B. Malloy, District Associate Judge.

A mother appeals the termination of her parental rights to her one-year-old daughter. **AFFIRMED.**

Emily DeRonde of DeRonde Law Firm, PLLC, Johnston, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Ashley Beisch of Johnson Law Office, Ogden, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**TABOR, Judge.**

An incarcerated mother, Cristina, appeals the termination of her parental rights to her daughter, M.M., who will turn two years old this March.[1]  Cristina first challenges one of the two statutory grounds for termination.  She also contends termination was not in M.M.'s best interests and was unnecessary because the child is in the custody of a relative.  But mostly Cristina advocates for placing M.M. in a guardianship with the child's current caregiver and aunt, who already serves as guardian for M.M.'s nine-year-old half-sister, B.C.  Because the permanency of adoption is preferable to a guardianship for this child, we affirm.

## I.     Facts and Prior Proceedings

M.M. tested positive for methamphetamine at birth.  At the time of delivery, Cristina tested negative for all illegal substances.  But the test result was not an anomaly; Cristina admitted using drugs before realizing she was pregnant.  And both parents have a history of substance abuse.  In fact, Cristina's 2014 use of methamphetamine while caring for her then two-year-old daughter, B.C., led the Iowa Department of Human Services (DHS) to return a founded child abuse report.  After DHS involvement with the family, at age nine, B.C. was placed in a guardianship with Cristina's sister, Emily.

After M.M.'s birth, Cristina obtained a substance abuse evaluation and started intensive outpatient treatment.  Meanwhile, the juvenile court adjudicated M.M. as a child in need of assistance, but custody remained with her parents.  Under the DHS safety plan, Cristina and Johnathan would stay with M.M. in the

---

[1] The juvenile court also terminated the parental rights of M.M.'s father, Johnathan, who does not appeal.

home of Cristina's father and sister. The parents followed the safety plan for about four months, but in July their sweat patch tests registered positive for methamphetamine. The DHS then removed M.M. from parental care to the home of another relative.

A month later, M.M. went back to live with her maternal grandfather. But her parents were no longer there. Then in September 2020, Cristina was arrested for violating her probation. A few months later, Cristina received an indeterminate five-year prison sentence for theft and forgery convictions. Meanwhile, the DHS placed M.M with Emily. Emily has been M.M.'s primary caregiver since November 2020 and is willing to adopt the child.

Citing the parents' methamphetamine use and the mother's incarceration, the State petitioned to terminate parental rights in July 2021. The juvenile court terminated Cristina's parental rights under Iowa Code section 232.116(1) (2021), paragraphs (e) and (h). Today we consider Cristina's appeal.

## II.     Scope and Standard of Review

We review terminations de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). Although we give weight to the juvenile court's fact findings, they do not bind us. *Id.* Our review follows a three-step process. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). We first examine whether the State proved a ground for termination under section 232.116(1). *Id.* If so, we consider whether it is in the child's best interests under section 232.116(2) to terminate parental rights. *Id.* at 706–07. Third, we determine whether any factors in section 232.116(3) weigh against termination. *Id.* at 707.

### III. Analysis

Cristina first disputes the State's proof that she has not maintained "significant and meaningful contact" with M.M. under section 232.116(1), paragraph (e). But Cristina does not contest the second ground for termination, paragraph (h). Her failure to challenge that alternative waives any claim of error and we may affirm on that ground without further analysis. *See In re K.K.*, No. 16-0151, 2016 WL 1129330, at *1 (Iowa Ct. App. Mar. 23, 2016) (noting parent's failure to challenge evidence under paragraphs (h) and (*l*) and affirming on those grounds).

Cristina next asserts that termination was not in M.M.'s best interests under section 232.116(2). She mentions her older daughter, B.C., who is in a guardianship with Emily. And she maintains that it would be "detrimental to M.M.'s future well-being to terminate the rights to M.M. yet maintain rights to B.C. under a guardianship."

But our best-interests analysis focuses on the factors listed by the legislature. Iowa Code § 232.116(2); *see In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (advising judges not to impose their own perception of what is in a child's best interests outside the statutory guidelines). We must give primary consideration to the child's safety, to the best placement for furthering her long-term nurturing and growth, and to her physical, mental, and emotional condition and needs. *See P.L.*, 778 N.W.2d at 39. Under that framework, we decline to speculate that a different custodial arrangement for M.M. than her sister, B.C., would harm M.M. down the road. What we do glean from the record is that adoption by her aunt would promote M.M.'s long-term nurturing and growth.

After the permanency hearing, the juvenile court had the option of transferring guardianship and custody of M.M. to a suitable person rather than terminating parental rights. *See* Iowa Code §§ 232.104(2)(d)(1); 232.117(5). Guardianships require clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child." *Id.* § 232.104(4)(a). But that evidence is missing here. As the juvenile court aptly observed: "Guardianship would keep [M.M.] safe, but termination and adoption provides a much greater degree of permanency for this very young child."

As a final point, Cristina contends the juvenile court should have preserved her parental rights because M.M. is placed with an aunt. *See* Iowa Code § 232.116(3)(a) (allowing court discretion not to terminate when a relative has "legal custody of the child"). But section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And the burden of establishing an exception rests with the mother. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

Cristina again insists a guardianship would be a better choice than termination. In Cristina's words: "A guardianship would not change the day-to-day life for M.M. right now, but it would allow the mother to maintain visitation rights of both children." She adds: "With guardianships now under the jurisdiction of the juvenile court, it would be the same judge monitoring the guardianships. If Cristina were to better herself to the point where it would be appropriate to terminate the guardianship, Cristina will have to prove that to the juvenile judge."

We recognize the truth in Cristina's assertions. But even under these circumstances, "a guardianship is not a legally preferable alternative to

termination." *See In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021). M.M. is very young, and the record shows some tension between Cristina and Emily.[2] *See In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017) (holding guardianship appropriate when relationship between mother and grandmother was "free of conflict"). Emily's willingness to care for M.M. does not diminish the child's need for permanency. Emily communicated to the case workers that she "would not stand in the way of Cristina having a relationship with [M.M.] as long as Cristina was doing what she should be doing and that it didn't cause any issues for [M.M.]." On this record, we agree with the juvenile court that termination was appropriate even though M.M. was in her aunt's custody.

**AFFIRMED.**

---

[2] For example, Cristina testified that Emily blocked the phone number after Cristina repeatedly tried to call the children from jail.